UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERRICK MOORE,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>J.J. DURAN, et al.,<br><br>　　　　　　　　Defendants. | Case No.: 23-cv-194-GPC-DDL<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL;**<br><br>**(2) DENYING PLAINTIFF'S MOTION FOR LEAVE TO ISSUE A SUBPOENA; and**<br><br>**(3) DENYING PLAINTIFF'S MOTION TO AMEND THE PRETRIAL SCHEDULE**<br><br>**[Dkt. Nos. 47, 52, and 55]** |

　　　　Before the Court are a motion to amend the pretrial schedule [Dkt. No. 47], a motion to compel further discovery responses from Defendants [Dkt. No. 52]; and a motion for leave to issue a subpoena to Richard J. Donovan Correctional Facility ("RJD") and/or the California Department of Corrections and Rehabilitation ("CDCR") [Dkt. No. 55] by *pro se* Plaintiff Merrick Moore (collectively, the "Motions"). For the reasons stated below, Plaintiff's motion to compel [Dkt. No. 52] is **GRANTED IN PART** and **DENIED IN**

1

**PART**; the motion for leave to issue a subpoena [Dkt. No. 55] is **DENIED**; and the motion to amend the schedule [Dkt. No. 47] is **DENIED AS MOOT**.

## I.
## BACKGROUND

Plaintiff filed his complaint pursuant to 42 U.S.C. § 1983 on February 1, 2023, alleging Defendants violated his rights under the United States Constitution. Dkt. No. 1. Briefly stated, Plaintiff alleges that on March 1, 2018, after an institutional classification committee hearing, Defendants used excessive force against him and Defendant Duran sexually assaulted him. *See generally id.* Plaintiff's Eighth Amendment claim survived preliminary screening. Dkt. No. 4. Defendants answered the complaint on July 26, 2023, generally denying Plaintiff's allegations and asserting affirmative defenses. Dkt. No. 21.

On October 4, 2023, the Court held a Case Management Conference. In anticipation of that conference, the parties filed competing discovery plans. Dkt. Nos. 33 (Defendants), 35 (Plaintiff). On October 5, 2023, the undersigned issued a Scheduling Order.

On January 10, 2024, the Court held a Status Conference with the parties. It emerged during the conference that Plaintiff believed his proposed discovery plan, and in particular the section entitled "Areas of Discovery" (*see* Dkt. No. 35 at 3), sufficed as service of discovery requests upon Defendants. Defendants agreed to construe Plaintiff's "Areas of Discovery" as requests for the production of documents served on January 10, 2024, and to respond accordingly. Dkt. No. 42.

On March 4, 2024, the Court docketed Plaintiff's motion to amend the pretrial schedule. Dkt. No. 47. Plaintiff related he had not received responsive documents from Defendants and needed additional time to bring a motion to compel and to "locate [his] legal property." *Id.* at 1.

On March 11, 2024, the Court held a Mandatory Settlement Conference. The case did not settle, and the Court held a Status Conference on the record to address the discovery issues raised by Plaintiff in his motion to amend the schedule. Dkt. No. 49. Following the Status Conference, the Court ordered Defendants to file a Discovery Status Report and to

respond to Plaintiff's interrogatories by March 25, 2024. Defendants timely complied; however, without awaiting the Discovery Status Report, Plaintiff filed both the motion to compel and the motion for leave to issue a subpoena. Dkt. Nos. 52, 55. Plaintiff also filed an objection to Defendants' Discovery Status Report. Dkt. No. 59.

On April 8, 2024, the Court held a discovery hearing (the "April 8 Hearing") to address the issues raised in Plaintiff's various motions, the Discovery Status Report, and Plaintiff's objection. To ensure a complete record, the Court ordered Defendants to respond to Plaintiff's Motions, and directed Defendants to lodge certain documents they asserted were privileged for the undersigned's *in camera* review. Dkt. No. 61. Defendants timely complied. Dkt. Nos. 62, 63. This Order follows.

## II.
## LEGAL STANDARDS

**A. Scope of Discovery**

Federal Rule of Civil Procedure 26 provides:

> parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Although broad, "the scope of discovery is not without limits." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051 (S.D. Cal. 2015).[1] The Court "must limit" irrelevant, overly broad, unduly burdensome, cumulative or disproportional discovery. Fed. R. Civ. P. 26(b)(2)(C). Whether to permit or deny

///

---

[1] All citations and internal quotation marks are omitted unless otherwise stated.

discovery is left to the Court's "broad" discretion. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

**B. Official Information Privilege**

"Federal common law recognizes a qualified privilege for official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir.1990). "In determining what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege." *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995). This balancing approach is "moderately pre-weighted in favor of disclosure." *Id.*

The party asserting the privilege bears the burden of establishing it applies. *Shiflett by and through Davenport v. City of San Leandro*, No. 21-cv-7802-LB, 2023 WL 4551077, at *2 (N. D. Cal. July 13, 2023). This requires the party to make a "substantial threshold showing" by "submit[ting] a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit." *Soto*, 162 F.R.D. at 613. The affidavit must include:

> (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made.

*Id.* "If the nondisclosing party does not meet this initial burden, the court will order disclosure of the documents; if the party meets this burden, the court generally conducts an *in camera* review of the material and balances each party's interests." *Rogers v. Giurbino*, 288 F.R.D. 469, 481 (S.D. Cal. 2012).

/ / /

# III.
# DISCUSSION

**A. Motion to Compel [Dkt. No. 52]**

Plaintiff moves to compel responses to his document requests and identifies ten broad categories of documents that he contends are responsive to his discovery requests and have not been produced.[2]  *Id.* at 1-2.  As Defendants correctly point out, the Court ordered them to respond to, and the "scope of requested documents 'served' by Plaintiff" is defined by, the requests set forth in Plaintiff's Discovery Plan [Dkt. No. 35].  Dkt. No. 62 at 3.  Nevertheless, considering Plaintiff's *pro se* status, the Court has endeavored to correlate the ten categories identified in Plaintiff's motion to compel to the requests "served" in the Discovery Plan where possible.

*Category 1: "Videotaped statement of Plaintiff regarding PREA allegation"*

This category is encompassed by Plaintiff's request for "Any and all taped interviews regarding the excessive force and sexual assault occurring March 1, 2018."  *See* Dkt. No. 35 at 3.  Defendants report that one video was produced to the Corcoran litigation coordinator for Plaintiff's viewing, and that no other videos, recordings, photographs or audio were withheld.  Dkt. No. 56 at 6.  At the April 8 Hearing, Defendants confirmed that after a diligent search and reasonable inquiry, no other video was located.  *See also* Dkt. No. 62 at 2 (representing that after a "diligent and good faith effort," Defendants have

---

[2]  These are: "(1) Videotaped statement of Plaintiff regarding PREA allegation; (2) Any and all internal affairs investigations and conclusions; (3) Video footage inside the building where the incident occurred on 3/1/18; (4) All photographs of Plaintiff taken 3/1/18 pertaining to the incident; (5) Any prior grievances filed against all defendants involving excessive use of force, PREA, due process of law violations; (6) Lawsuits past or previous; (7) Bad performance reports on all defendants; (8) Citizen complaints or internal disciplinary reports filed against the defendants; (9) Taped, video, recorded interviews involving the 3/1/18 incident with any and all defendants involved; and (10) PREA kit, hospital admission reports, treatment, evidence collected involving the PREA allegation."  *See* Dkt. No. 52 at 1-2.

produced or withheld as privileged all responsive documents).

The Court cannot compel a party to produce documents that do not exist. *See Woodway USA, Inc. v. LifeCORE Fitness, Inc.*, No. 22CV492-JO (BLM), 2024 WL 890547, at *5 (S.D. Cal. Feb. 29, 2024) (collecting cases); *see also Kakowski v. Allison*, No. 21CV1675-JAH(LR), 2022 WL 17652776, at *4 (S.D. Cal. Dec. 13, 2022) ("Rule 34 only requires a party to produce documents that are already in existence"). Furthermore, the requesting party's "suspicion that additional documents must exist is an insufficient basis to grant a motion to compel." *Lee v. Lee*, No. CV198814JAKPVCX, 2021 WL 430696, at *4 (C.D. Cal. Jan. 27, 2021).

For the foregoing reasons, Plaintiff's motion to compel production of additional documents responsive to Category 1 is **DENIED**.

*Category 2: "Any and all internal affairs investigations and conclusions"*

This category is encompassed by Plaintiff's request for "Internal affairs reports [and] files concerning the March 1, 2018 incident." Dkt. No. 35 at 3. Defendants report that no internal affairs investigation was conducted and therefore there are no responsive documents. Dkt. No. 56 at 2. Notwithstanding, Defendants produced the rules violation reports, 7219s, disciplinary hearing report, appeal logs and the "Incident Commander's Review of Use of Force Incidents." *See id*. Defendants' counsel confirmed at the April 8 Hearing that no further responsive materials were located after a diligent search and reasonable inquiry.

For the same reasons discussed above, Plaintiff's motion to compel production of documents responsive to Category 2 is **DENIED**.

*Category 3: "Video footage inside the building where the incident occurred on 3/1/18"*

This category is encompassed by Plaintiff's requests for "Any and all building six video, audio, photographs, digital, CD, memory card, SIM card, phone pictures, radio transmission between the defendants named in the complaint" and "Any camera footage from Building Six of Plaintiff being brought to R&R and taken to C Facility . . . from

March 1, 2018 and Holding Cage log book." Dkt. No. 35 at 3. Defendants produced a two-page document in response, and report no other responsive material was withheld. Dkt. No. 56 at 6. With respect to video footage and body-worn camera footage, Defendants state there is no such video footage to produce because surveillance cameras were not installed at RJD until 2021 and body-worn cameras were not implemented until 2020. *See id.* at 6-7. In support, Defendants submit the sworn declaration of E. Taboada, RJD's Litigation Coordinator, and various memoranda regarding the implementation of surveillance and body-worn cameras at the institution. *See* Dkt. Nos. 56 at 42-62.

For the same reasons discussed above, Plaintiff's motion to compel production of documents responsive to Category 3 is **DENIED**.

*Category 4: "All photographs of Plaintiff taken 3/1/18 pertaining to the incident"*

This category appears to be encompassed by Plaintiff's requests for "Any and all building six video, audio, photographs, digital, CD, memory card, SIM card, phone pictures, radio transmission between the defendants named in the complaint." Dkt. No. 35 at 3. Defendants reported that no responsive materials were withheld, and confirmed at the April 8 Hearing, that after a diligent search and reasonable inquiry, they did not locate any responsive photographs. *See* Dkt. No. 56 at 6.

For the same reasons discussed above, Plaintiff's motion to compel production of documents responsive to Category 4 is **DENIED**.

*Category 5: "Any prior grievances filed against all defendants involving excessive use of force, PREA, due process of law violations"*

Considering Plaintiff's *pro se* status, the Court construes this category to fall within Plaintiff's request for "performance reports[,] counseling memo's [*sic*][,] citizen complaints[,] [and] internal investigation reports filed against any of the Defendants." Dkt. No. 35 at 3. As drafted, the request is overbroad in both time and scope. However, Plaintiff appears to have limited the scope of information requested to those complaints against staff for the same misconduct as alleged in Plaintiff's complaint. Defendants objected that the request called for privileged information, but produced nonprivileged documents from

tracking systems for inmate/parolee appeals and allegations against staff, and internal affairs allegation logs. Dkt. No. 56 at 2, 13; Dkt. No. 62 at 4. Defendants withheld 64 pages of documents as privileged, and state no other responsive documents were located after a diligent search. Dkt. No. 62 at 4.

In support of their assertion of the official information privilege, Defendants provided the declaration of E. Taboada, a Litigation Coordinator at RJD. Dkt. No. 56 at 17-26. The Court finds Taboada's declaration is sufficient to satisfy Defendants' burden to make a "threshold showing" that the official information privilege applies. *Soto*, 162 F.R.D. at 613. The Court therefore proceeds with the balancing test articulated in *Soto*, weighing Plaintiff's interests as the party seeking discovery against Defendants' interests as the parties asserting the privilege. *Id*.

The Court has reviewed *in camera* documents designated PRIV 1-17, PRIV 24-26, PRIV 35, and PRIV 54-94, which are records of the investigation into Plaintiff's allegations that he was the victim of excessive force and sexual assault on March 1, 2018.[3] With one exception, these documents are highly relevant to Plaintiff's claims and not available to him from any other source.[4] They do not contain private or personal information about any other inmate or CDCR personnel, ameliorating any nonparty privacy concerns. Although Defendants articulate plausible security concerns regarding inmates' ability to manipulate the grievance process if any obtained access to these records, Dkt. No. 56 at 20-22, the Court finds this somewhat speculative concern does not outweigh Plaintiff's

---

[3] Defendants identified these documents as responsive to Categories 5, 7 and 8 in their opposition, *see* Dkt. No. 62 at 4-7, and identified them in their Status Report as responsive to other requests. The Court addresses these documents here as it is the first category to which Defendants' privilege objections apply. Ultimately, the precise category (or initial request) to which these documents are responsive is immaterial to the Court's analysis; as explained below, they are relevant to the litigation and must be produced.

[4] The document identified as PRIV 94 relates to allegations by Plaintiff against an unnamed staff member arising out of a separate incident in February 2018. This report is not relevant to this action, and Defendants are not required to produce PRIV 94.

need for these highly probative documents. The Court therefore overrules Defendants' objections. *See Sharpe v. Cryer*, No. 1:19-cv-00711-DAD-EPG(PC), 2021 WL 536532, at *2 (E.D. Cal. Jan. 28, 2021) (ordering production of similar records).

Defendants must produce PRIV 1-17, PRIV 24-26, PRIV 35, and PRIV 54-93 in accordance with the terms of this Order. Nevertheless, the Court shares Defendants' concern that Plaintiff does not have a secure means to store documents, and that documents in his cell could be accessed by other inmates to the detriment of CDCR staff. Dkt. No. 56 at 23-24. To protect nonparties, the names, job titles and any other personally identifying information of any staff member who is not a party to this litigation may be redacted from the documents. All signatures and contact information for staff, including parties, may also be redacted.

Turning to Plaintiff's request for "any prior grievances" against the defendants, no documents related to prior grievances have been provided for *in camera* review; the Court nevertheless considered Plaintiff's need for the information against Defendants' interest in keeping the information confidential. The Court is persuaded that providing Plaintiff with access to detailed and private information about other incidents involving nonparty inmates and corrections personnel could present a security risk, and is a significant intrusion on nonparty privacy rights. *See* Dkt. No. 56 at 20-21, 23. The Court further finds that Plaintiff's need for records concerning unrelated grievances is insufficient to outweigh these privacy and security concerns. Plaintiff has already been provided with appeal and staff complaint logs, by which he can understand the number and type of grievance against each Defendant and the outcome of any investigation into the same. The probative value of the complete grievance files is "minimal, if any." *Sharpe*, 2021 WL 536532, at *2 (denying motion to compel documents concerning "allegations by other inmates against [defendants]," finding them irrelevant and further noting the "sensitivity" of the information relating to nonparties).

For largely the same reasons, the Court also finds that the request for prior grievances is not proportional to the needs of the case. Searching for and identifying responsive

documents would require reviewing the personnel files of a dozen Defendants, scrutinizing all prior grievances (whether substantiated or not) and assessing whether the grievance relates to "excessive use of force, PREA, [or] due process of law violations," and compiling the entire grievance and response records for each grievance that is responsive. Dkt. No. 56 at 19. Given the marginal relevance of these documents, this expenditure of time and resources is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(2)(C) (directing that the Court must limit discovery that is not within the scope of Rule 26(b)(1)).

For the foregoing reasons, Plaintiff's motion to compel production documents responsive to Category 5 is **GRANTED IN PART** and **DENIED IN PART**.[5]

*Category 6: "Lawsuits past or previous"*

Even generously construing Plaintiff's discovery requests as stated in his Discovery Plan, the Court finds Plaintiff did not request "lawsuits past or previous." *See* Dkt. No. 35 at 3. Moreover, the Court finds this request is overbroad and seeks irrelevant information, insofar as Plaintiff's request is not limited to a reasonable time period, to lawsuits involving some or all of the Defendants in this action, nor to lawsuits that relate to similar conduct as alleged in Plaintiff's complaint. *See* Fed. R. Civ. P. 26(b)(1) and (2)(C). Finally, as Defendants correctly note, information regarding whether Defendants have previously been sued – even if relevant – is publicly available. *See* Dkt. No. 62 at 4; *accord* Fed. R. Civ. P. 26(b)(2)(C) (discovery must be limited where it "can be obtained from some other source that is more convenient, less burdensome, or less expensive.").

For the foregoing reasons, Plaintiff's motion to compel documents responsive to Category 6 is **DENIED**.

---

[5] In Plaintiff's objection to Defendants' status report, he stated without further explanation that he "seeks sanctions." Dkt. No. 59 at 5. Although the Court has ordered production of certain assertedly privileged documents, the Court finds Defendants asserted the privilege in good faith, and further finds that sanctions are not appropriate. To the extent that Plaintiff's objection can be construed as a motion for sanctions, the motion is denied.

*Category 7: "Bad performance reports on all defendants"*

As with Plaintiff's request for "prior grievances" in Category 5, this category is encompassed by his request for "performance reports[,] counseling memo's [*sic*][,] citizen complaints[,] [and] internal investigation reports filed against any of the Defendants." Dkt. No. 35 at 3. Unlike Category 5, however, Plaintiff has not tried to reasonably tailor his request for "performance reports" or "bad performance reports" to connect it to the claims and defenses in the case. Whether a particular defendant received a "bad performance report," for any reason and at any time, does not make any fact material to the litigation more or less likely. The Court finds this request is overbroad, seeks irrelevant information, and is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) and (2)(C).

Plaintiff's motion to compel production of documents responsive to Category 7 is **DENIED**.

*Category 8: "Citizen complaints or internal disciplinary reports filed against the defendants"*

As with Categories 5 and 7, the Court finds that Plaintiff's request for "citizen complaints or internal disciplinary reports filed against the Defendants" is overbroad in time and subject matter, seeks irrelevant information, and is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) and (2)(C). And, for the same reasons as stated above with respect to Category 5, the Court finds the security and nonparty privacy concerns implicated by production of staff complaints or disciplinary reports unrelated to the conduct giving rise to this action outweigh Plaintiff's need for responsive documents.

Plaintiff's motion to compel production of documents responsive to Category 8 is **DENIED**.

*Category 9: Taped, video, recorded interviews involving the 3/1/18 incident with any and all defendants involved*

As with Category 1, this category is encompassed by Plaintiff's request for "Any and all taped interviews regarding the excessive force and sexual assault occurring March 1, 2018." *See* Dkt. No. 35 at 3. Defendants state one video was produced to the Corcoran

litigation coordinator for Plaintiff's viewing and that no other videos, recordings, photographs or audio were withheld. *See* Status Report at 6. Dkt. No. 56 at 6. At the April 8 Hearing, Defendants confirmed that after a diligent search and reasonable inquiry, no other video was located. For the same reasons discussed above, the Court cannot compel production of documents that do not exist.

Plaintiff's motion to compel documents responsive to Category 9 is **DENIED**.

*Category 10: PREA kit, hospital admission reports, treatment, evidence collected involving the PREA allegation*

This category is encompassed in part by Plaintiff's requests for: "any and all hospital (admission) for the March 1, 2018 incident," "medical treatment Plaintiff received after the incident occurred on March 1, 2018," and "any and all information regarding a (SART) examination or rape kit performed on March 1, 2018 on Plaintiff." Dkt. No. 35 at 3.

Defendants stated at the April 8 Hearing that Plaintiff was not admitted to the hospital. They also reported that they have produced all records of Plaintiff's medical treatment related to the incident. Dkt. No. 56 at 7. For the same reasons discussed above, the Court cannot compel production of documents that do not exist.

As to Plaintiff's request to compel a "PREA kit" and "evidence collected involving the PREA allegation," Defendants state no rape kit or examination was performed. Dkt. No. 56 at 7. Defendants also stated they have produced all non-confidential PREA-related documents. *See id.* Defendants withheld a confidential PREA report (PRIV 87-93) which was part of the Court's *in camera* review. *See id.* For the same reasons as discussed above, the Court finds the official information privilege does not protect the confidential PREA investigation report from disclosure and overrules Defendants' objections to its production.

Plaintiff's motion to compel documents responsive to Category 10 is **GRANTED IN PART** and **DENIED IN PART**.

**B. Motion for Leave to Serve Subpoena [Dkt. No. 55]**

Plaintiff "moves for an order granting and providing a subpoena duces tecum to be served upon RJD" for the same documents, media and other materials that are at issue in

his motion to compel, including "video footage, taped recorded audio recordings of Plaintiff and correctional staff . . .; copies of photographs [and] interviews . . .; video surveillance of building six rotunda and dayroom as well as audio or transcripts of radio transmission[s] . . .." Dkt. No. 55 at 1. Plaintiff also seeks "records related to the installation of video cameras into the institution . . .." *Id.*

The Court agrees with Defendants that Plaintiff's request for leave to issue the above-described subpoena is "[d]uplicative and [u]nnecessary." Dkt. No. 62 at 7. As described during the April 8 Hearing and again in Defendants' opposition, Defendants are "obligat[ed] to locate and produce" responsive documents in the possession, custody and control of CDCR (which would include RJD), which they have done. *Id.* at 8. Were Plaintiff to serve a subpoena on CDCR or RJD, the same individuals who searched for and collected the documents responsive to Plaintiff's document requests to Defendants would be compelled to undertake the identical search, with identical results. *Id.* at 8-9. The Court finds Plaintiff's proposed subpoena to CDCR and/or RJD is "unreasonably cumulative or duplicative" and is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(2)(C).

Furthermore, Plaintiff's request for information about the installation of video cameras at RJD is satisfied by the documents and declaration included with Defendants' status report. *See* Dkt. No. 55 at 28-41, 43-57; 58-59; and 61-62.

Plaintiff's motion for leave to serve a subpoena is accordingly **DENIED**.

**C. Motion to Amend the Pretrial Schedule [Dkt. No. 47]**

On March 4, 2024, Plaintiff moved for a 30-day extension of the fact discovery cutoff to allow him to "locate his property" and file a motion to compel. Dkt. No. 47 at 1. He subsequently filed his motion to compel, which is disposed of in this Order. The Court therefore finds that further continuance of the March 4, 2024 deadline to complete fact discovery (or any other scheduling order deadline) on this basis is not necessary.

Plaintiff's motion to amend the pretrial schedule is accordingly **DENIED AS MOOT**.

# IV.
# CONCLUSION

For the reasons stated above, the Court **ORDERS** as follows:

1. Plaintiff's motion to compel [Dkt. No. 52] is **GRANTED IN PART** and **DENIED IN PART**.

2. Defendants shall produce PRIV 1-17, PRIV 24-26, PRIV 35, and PRIV 54-93 to Plaintiff by not later than **May 9, 2024**. The documents may be redacted consistent with the terms of this Order. Plaintiff's motion to compel is denied in all other respects; no further search for or production of responsive material is required.

3. Plaintiff's motion for leave to serve a subpoena [Dkt. No. 55] is **DENIED**.

4. Plaintiff's motion to amend the pretrial schedule [Dkt. No. 47] is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: May 3, 2024

_David Leshner_
Hon. David D. Leshner
United States Magistrate Judge