UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERRICK MOORE, an individual,<br><br>                          Plaintiff,<br><br>v.<br><br>J.J. DURAN et al.,<br><br>                         Defendants. | Case No.: 23-CV-0194-GPC-DDL<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 68]** |

This is a civil rights action pursuant to 42 U.S.C. § 1983 brought by Merrick Moore for the violation of his constitutional rights under the Eighth Amendment.  Before the Court is Defendants' motion for summary judgment.  For the reasons set forth below, the Court **DENIES** the motion.

## BACKGROUND

### Procedural History

On February 1, 2023, Moore filed a pro se complaint alleging violations of the Eighth Amendment against Defendants, all state correctional employees at Richard J.

1

Donovan Correctional Facility (RJD), named in their individual capacities.[1]  ECF No. 1. In particular, Moore alleges that several Defendants used excessive force against him, that other Defendants failed to protect him, and that Defendant Duran sexually assaulted him.  ECF No. 1.  Moore's Eighth Amendment claim survived preliminary screening, ECF No. 4, and Defendants answered the complaint on July 26, 2023, generally denying Moore's allegations and in turn asserting affirmative defenses, ECF No. 21.  One such defense is that Moore's excessive force claim is barred by the rule in *Heck v. Humphrey*, 512 U.S. 477 (1994), because success of Moore's claim would necessarily imply the invalidity of underlying disciplinary proceedings brought against him.  ECF No. 21 at 3.

On June 18, 2024, Defendants moved for summary judgment based upon *Heck*.[2] ECF No. 68.  Moore filed a sworn opposition, ECF No. 70, and Defendants filed a reply, ECF No. 72.  For the reasons set forth below, the Court **DENIES** Defendants' motion on the grounds that Moore's excessive force claim is not barred by the rule in *Heck*, and that Defendants failed to show an absence of a triable issue of fact.

## Factual History

This case arises from a series of incidents that occurred on March 1, 2018, while Moore was incarcerated at the Richard J. Donovan Correctional Facility.  ECF No. 1. at 5.  It is undisputed that Moore was at a classification committee hearing that day in front of the Institution Classification Committee ("ICC"), and later, after the hearing, was

---

[1] The record shows that Officer Manquero, one of the named Defendants, was never properly served.  In Moore's opposition to Defendants' motion for summary judgment, Moore at times lists Manquero as one of the defendants, ECF No. 70-1 at 1, and other times does not, ECF No. 70 at 1.  The Court has ordered Moore to show cause as to why Manquero should not be dismissed under F. Rule Civ. P. 4(m).  ECF No. 75.

[2] Defendants included in their motion the separate and adequate notice required in this Circuit for *pro se* prisoners facing summary judgment. *See Rand v. Rowland*, 154 F.3d 952, 9862–64 (9th Cir. 1998) (en banc).

involved in an altercation with Officer Manquero, which resulted in Moore receiving a disciplinary rules violation report ("RVR"), being found guilty of battery on a peace officer, and losing 150 days of credit. ECF No. 68-3 (Exhibit D). The undisputed facts end there.

## Moore's Version of Events

According to Moore, at the classification committee hearing, the ICC, which included Defendants Covello and Searless, told him he was being sent to "C Facility," a Sensitive Needs Yard (SNY). ECF No. 1 at 5. A Sensitive Needs Yard is a facility designated for incarcerated persons who have safety concerns regarding living in a "General Population" yard.[3] Moore questioned this decision, arguing that his administrative segregation placement was a retaliatory response to his complaint against a social worker for sexual misconduct, *see* ECF No. 1 at 8, and said that he should be considered "general population." *Id*. At this point, Moore alleges that Defendants Davis and Castillo roughly picked him up from his chair and then slammed him on a table in front of the ICC. *Id*.

Moore alleges that he was then dragged out of the committee room and sent to receiving and release, where he told Defendant Andersen about being slammed on the table, but Andersen instructed Defendant Cortez to nevertheless escort Moore to C Facility. *Id*. Once at C Facility, Cortez ordered Moore to wait by the wall, while Cortez went into the program office. Manquero and Defendant Valencia stood near Moore. Defendants Smith and Gonzalez came out of the program office and ordered Moore to stay still and face the wall, and that if he made any move, Manquero and Valencia would

---

[3] California Department of Corrections and Rehabilitation, *SNY and NDPF – Frequently Asked Questions* (December 2022), https://www.cdcr.ca.gov/family-resources/2022/12/15/sny-ndpf-faq/ (last visited Sept. 10, 2024).

1  "beat" him up. *Id*. at 6. Smith then ordered Manquero to cuff Moore, which he did. *Id*.
2  When Moore saw Cortez exiting the program office, he called out Cortez's name, and at
3  that moment, Smith ordered Manquero and Valencia to "take [Moore] down." *Id*.
4  Manquero, Valencia, Smith, and Gonzalez then proceeded to physically assault Moore
5  while he remained cuffed. *Id*. Defendant Bracamonte stood by and witnessed the
6  assault, but did nothing. *Id*.

At this time, Moore alleges that Defendant Duran joined in on the assault and jammed his service baton into Moore's rectum while Moore lay on the ground. *Id*. at 7. Bracamonte said to take Moore to the gym, so Duran snatched him up by the collar, and while Moore's pants were falling down, Duran jammed his baton into Moore's rectum for a second time. *Id*.; ECF No. 70 at 3. Once inside the gym, Duran slammed Moore into the metal cage, punched his face, and told him to "get naked [expletive]." ECF No. 1 at 7.

## Defendants' Version of Events

According to Defendants, after the committee hearing, Moore was being escorted out of the room, uncuffed, when he suddenly jerked his head back and struck Manquero on the left side of the face. ECF No. 68 at 3. Manquero then restrained Moore and took him down to the ground, upon which he cuffed Moore. *Id*. He later surrendered custody of Moore to Duran. ECF No. 68-3 (Exhibit A).

This battery resulted in facial bruising, swelling, and redness, which was documented and memorialized in a medical report. ECF. No. at 68-3 (Exhibit C). Manquero told the medical professional that he "got head-butted" and "got a headache." *Id*.

A RVR was submitted against Moore, detailing the above events. *Id*. (Exhibit A). After a disciplinary hearing on June 20, 2018, Moore was found guilty of battery on a

peace officer, pursuant to Cal. Code Regs., 15 § 3005(d)(1). ECF No. at 68-3 (Exhibit D). This resulted in him losing 150 days of good-time credit. *Id*.

Beyond summarily denying Moore's allegations that he was assaulted, ECF No. 72 at 1, Defendants' motion is silent on what happened during the classification committee hearing with Defendants Castillo and Davis, and on what happened after the classification committee with Defendants Valencia, Smith, Gonzalez, Bracamonte, and Duran, *see generally* ECF No. 68 and 72.

## LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). And a dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The movant bears the initial burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant can satisfy this burden by either (1) presenting evidence negating an essential element of the nonmovant's case or (2) demonstrating that the nonmovant failed to make a showing sufficient to establish an essential element on which the nonmovant will bear the burden of proof at trial. *Id*.

In making this determination, the Court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). A judge must not otherwise make credibility determinations, weigh the evidence, or draw inferences, because these are functions reserved for the jury. *Anderson*, 477 U.S. at 255. The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se

1 | prisoner.  *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotations and citations omitted).

## DISCUSSION

### Requests for judicial notice

The Court begins with the requests for judicial notice filed by Defendants and Moore, respectively ECF No. 68-3 and No. 71.

According to the Federal Rules of Evidence, the Court may take judicial notice of facts not subject to reasonable dispute because they are either (1) generally known within the court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  Generally, government documents are "considered not to be subject to reasonable dispute."  *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 937–38 (C.D. Cal. 2011) (internal quotation marks omitted).  Prison documents, including Rules Violation Reports ("RVRs"), can be subject to judicial notice.  *See Daniels v. Valencia*, No. 1:17-cv-00492-DAD-EPG, 2018 WL 3640321, at *3 (E.D. Cal. July 30, 2018) (citing cases).  The Court "may not, however, take judicial notice of, and construe as true, the factual allegations contained in the RVRs as those factual allegations are in dispute."  *Id.* at *4; *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("a court cannot take judicial notice of disputed facts contained in [] public records").

Defendants have requested the Court to judicially notice the following documents: the RVR for the head-butting Moore allegedly committed against Manquero; three photographs of Manquero that allegedly depict battery; a Medical Report of Injury or Unusual Occurrence on Manquero's physical condition; the Disciplinary Hearing Results; and the Department Operations Manual, § 51020.17.1 (laying out the protocol for staff reporting on uses of force).  ECF No. 68-3.  Moore disputes all of these

documents and/or the underlying facts of these documents, except for the Department Operations Manual.  ECF No. 70-2 at 2.

On his part, Moore has requested the Court to judicially notice the following documents: the Administrative Segregation Unit Placement Notice, which Moore received after he allegedly struck Manquero; the RVR;[4] the Supplemental to the RVR, which included questions submitted by Moore and answered by several Defendants; two Medical Reports of Injury or Unusual Occurrence on Moore's physical condition; two Health Care Services Request forms filled out by Moore; and an Inmate/Parolee Request for Interview, Item or Service form that Moore filled out to obtain video footage of the March 1 incidents.  ECF No. 71.  Defendants' reply brief did not oppose Moore's request for judicial notice.  *See* ECF No. 72.

The Court takes judicial notice of the *existence* of all these documents.  As documents prepared, recorded, and stored by state officials, the accuracy as to their existence is undisputed and therefore judicially noticed—in other words, the documents are what the parties purport them to be.  *See Daniels*, 2018 WL 3640321, at *3 (taking judicial notice of public records was appropriate because no party disputed their accuracy).  Further, the Court takes judicial notice of the RVR, the RVR Supplemental, and the Disciplinary Hearing Results *only as to* the charge of which Moore was found guilty, the victim of that charge, and the punishment imposed.  And the Court takes

---

[4] While Moore, like Defendants, requested judicial notice of the RVR, it appears that Moore wished to bring the RVR to the Court's attention because he disagreed with it— *not* to have the Court take judicial notice of the facts underlying the RVR.  In his opposition brief, Moore states, "The Rules Violation Report (RVR) is fabercated [sic] which is evident by the refusal to afford plaintiff the witnesses and evidence requested…" ECF No. 70-1 at 2; *see also* ECF No. 70 at 2 ("The Rules Violation Report (RVR) I requested witnesses… no evidence was provided[.] All my questions for each witness was [sic] deemed irrelevant denying my due process.").

judicial notice of the contents of the Department Operations Manual § 51020.17.1, since Moore did not dispute it and because it does not involve any disputed facts.  However, as to all other documents, the Court does not summarily take judicial notice of the truth of their contents, because these involve facts at the heart of the dispute between Moore and Defendants.  "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999.

Finally, for the remaining documents requested by Defendants and Moore (i.e., the medical reports, photographs, requests for health services, request for video footage), the Court does not take judicial notice of their contents.

## Motion for summary judgment

Defendants' sole argument in their motion for summary judgment is that Moore's claims are barred by the U.S. Supreme Court decisions in *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997).  Defendants argue that if Moore's suit were to proceed, this case would "in effect, re-litigate Plaintiff's disciplinary hearing finding of guilty for battery on a peace officer" and that the "guilty finding is necessarily inconsistent with Plaintiff's allegations." ECF No. 68-1 at 6.  Moore disagrees.

Under the U.S. Supreme Court's decision in *Heck v. Humphrey*, to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other actions that could render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a writ of habeas corpus.  *Heck*, 512 U.S. at 486–87.  This has been called the "favorable termination" *Heck* rule, and it bars a plaintiff from seeking damages based on claims that would "necessarily imply the invalidity" of an underlying conviction or sentence that has not (yet) been terminated.  *Id*. at 489–90.  In other words, if a § 1983

1  plaintiff could only prevail by negating an element of the offense of which he has been
2  convicted, then he is *Heck*-barred.
3      The underlying rationale is that "[a] state prisoner cannot use a § 1983 action to
4  challenge the 'fact or duration of his confinement,' because such an action lies at the
5  'core of habeas corpus.'" *Simpson v. Thomas*, 528 F.3d 685, 693 (9th Cir. 2008) (quoting
6  *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)).
7      The Supreme Court in *Edwards v. Balisok* extended the *Heck* doctrine to civil
8  actions that challenge events resulting in the loss of good-time credits, parole denial, or
9  other issues that might affect the duration of a sentence. *Edwards v. Balisok*, 520 U.S. at
10 646–648 (disciplinary proceedings). But the Court later clarified, in *Muhammad v.*
11 *Close*, that when the § 1983 claim does not necessarily implicate the underlying
12 disciplinary proceeding, it may proceed. *Muhammad v. Close*, 540 U.S. 749, 754–55; *see*
13 *also Smithart v. Towery*, 79 F.3d 951, 953 (9th Cir. 1996) ("where plaintiff's action 'even
14 if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment
15 against the plaintiff, the action should be allowed to proceed'") (citing *Heck*, 512 U.S. at
16 487) (emphasis in original).
17      Here, Moore's § 1983 excessive force claim does not necessarily implicate the
18 underlying disciplinary proceeding, and therefore is not *Heck*-barred. In fact, Moore's
19 claim and the disciplinary finding that he was guilty of battery on a peace officer are
20 based on entirely different factual predicates. Defendants' motion relies on one incident:
21 Moore allegedly head-butting Manquero. Meanwhile, Moore identifies <u>three</u> separate
22 incidents: being slammed on a table during the classification committee hearing; being
23 hand-cuffed and then assaulted by Manquero, Valencia, Smith, and Gonzalez, while
24 Bracamonte stood by and watched; and being sexually assaulted by Duran with a baton.
25      None of these three incidents are directly addressed or contradicted by Defendants'
26 Motion and Reply. The disciplinary finding and the § 1983 excessive force claim are

apparently based on different incidents, and thus *Heck* does not bar the § 1983 claim from proceeding. *See Hooper v. County of San Diego*, 629 F.3d 1127, 1132 (9th Cir. 2011) ("Though occurring in one continuous chain of events, two isolated factual contexts would exist, the first giving rise to criminal liability on the part of the criminal defendant, and the second giving rise to civil liability on the part of the arresting officer.") (quoting *Yount v. City of Sacramento*, 183 P.3d 471, 482 (Cal. 2008)); *see also Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005) (finding excessive force claim not *Heck*-barred because "the excessive force may have been employed against [plaintiff] *subsequent* to the time he engaged in the conduct that constituted the basis for his conviction") (emphasis added).

Even if the Court construed Moore's alleged head-butting of Manquero as part of the same incident in which Moore alleges Manquero (and others) assaulted him, Defendants have not shown how the excessive force claim is necessarily inconsistent with the disciplinary finding. Even though Moore was found guilty of head-butting Manquero, it stands that Defendants Valencia, Smith, Gonzalez, and Bracamonte could nevertheless still be found liable for acting "maliciously and sadistically" to harm Moore. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The two possibilities can exist in tandem. *See Gabalis v. Plainer*, No. 2:09-cv-00253-CMK, 2010 WL 4880637, at *7 (E.D. Cal. Nov. 23, 2010) ("[I]t is possible for defendants to have used excessive force and for plaintiff to have attempted to assault a correctional officer. Thus, success on plaintiff's civil rights claims would not necessarily imply that the guilty finding and resulting loss of good-time credits is invalid.").

As this Order makes clear, whether *Heck* applies in this context is a fact-heavy inquiry, and to succeed on summary judgment, Defendants must show they are entitled to judgment as a matter of law. However, besides a cursory denial of Moore's allegations,

Defendants' Motion and Reply make no attempt to show an absence of a triable issue. Defendants therefore fail to meet the summary judgment standard.

## CONCLUSION

Based on the foregoing, the Court finds that evidence of genuine issues of material fact exist for trial and that Plaintiff's excessive force claim is not barred by *Heck*. Accordingly, the Court **DENIES** Defendants' motion for summary judgment.

**IT IS SO ORDERED.**

Dated:  September 20, 2024

Hon. Gonzalo P. Curiel
United States District Judge